IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| TRACY LUTTRELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 08C 1774 |
| | ) |
| MADISON APARTMENT GROUP, L.P., | ) Judge Gettleman |
| BPG PROPERTIES, LTD., | ) Magistrate Judge Keys |
| | ) |
| Defendant. | ) |

**MADISON APARTMENT GROUP, L.P. AND BPG PROPERTIES, LTD.'S
ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT**

Madison Apartment Group, L.P., ("Madison") and BPG Properties, Ltd. ("BPG") (hereinafter collectively "Defendants"), by their undersigned attorneys, hereby respond to the Complaint as follows:

**Facts Common To All Counts**

1. At all times relevant to this Complaint, Plaintiff, Tracy Luttrell, has been a citizen of the State of Illinois residing in Chicago, Illinois. Plaintiff was employed by Defendants Madison and BPG, from August 16, 2006 until November 28, 2007.

**ANSWER:** After reasonable investigation, Defendants are without knowledge or information sufficient to form a belief as to the truth of the first sentence of this allegation. The term "[a]t all times relevant to this Complaint" is not defined. Moreover, Madison was informed that Plaintiff moved out of State. The remainder of this allegation is denied.

2. Defendant Madison is a limited partnership organized under the laws of Pennsylvania and wholly owned by BPG, with its principal place of business located at 770 Township Line Road, Suite 150, Yardley, Pennsylvania and its corporate headquarters located at 3100 Centre Square West, 1500 Market Street, Philadelphia,

                    Pennsylvania where it operates a company that manages residential housing communities.

**ANSWER:**   It is denied that Madison's corporate headquarters are located at 3100 Centre Square West, 1500 Market Street, Philadelphia, Pennsylvania. The remainder of this allegation is admitted.

       3.      Defendant BPG is a limited partnership organized under the laws of Pennsylvania, with its principal place of business located at 770 Township Line Road, Suite 150, Yardley, Pennsylvania and its corporate headquarters located at 3100 Centre Square West, 1500 Market Street, Philadelphia, Pennsylvania where it operates as a private equity real estate fund manager.

**ANSWER:**   Admitted.

      4.      Defendants Madison and BPG operate as one and the same organization. The companies share office space and employees and operate as alter egos of each other.

**ANSWER:**   Denied.

      5.      Plaintiff was employed by Defendants in Chicago, Illinois.

**ANSWER:**   It is admitted that Plaintiff was employed in Chicago, Illinois. The remainder of this allegation is denied.

      6.      Venue is properly laid in this County because Defendants at all relevant times transacted business in Cook County, Illinois and all acts giving rise to this action occurred in Cook County, Illinois.

**ANSWER:**   This allegation is a conclusion of law to which no response is required.

## COUNT I
### Common Law Retaliatory Discharge

      7.      Plaintiff was offered the position of Regional Property Manager by Defendants on July 12, 2006.

**ANSWER:**   Denied.

    8.  Upon acceptance of the position, Plaintiff moved to Chicago, Illinois from Huntersville, North Carolina and moved into a property owned by Defendants where she worked from a satellite office in her apartment building.

**ANSWER:** It is admitted that Plaintiff accepted the position of Regional Property Manager for Madison and moved to Chicago.  It is further admitted that she worked in a Madison office that was located in the same building in which she had an apartment.  The remainder of this allegation is denied.

    9.  Plaintiff was not an office employee because her position as Regional Property Manager required extensive multi-state travel.

**ANSWER:** It is admitted that Plaintiff's position was Regional Property Manger and that the position required travel.  The remainder of this allegation is denied.

    10. During her employment with Defendants, Plaintiff reported to Ann Marie Niklaus, the Regional Vice President in the Philadelphia office.

**ANSWER:** It is admitted that Plaintiff reported to Ms. Niklaus, whose title is Regional Vice President and who is located in Philadelphia.  The remainder of this allegation is denied.

    11. During her employment with Defendants, the properties managed by Plaintiff were regularly ranked "excellent" by the monthly property Scorecards issued by Defendants' management.

**ANSWER:** Denied.

    12. On July 26, 2007, Plaintiff attended a scheduled doctor's visit during which her physician diagnosed a large mass in her uterus.  Her doctor recommended that she see a specialist and continue to work from home in the interim.

**ANSWER:** After reasonable investigation, Defendants are without knowledge or information sufficient to form a belief as to the truth of this allegation.

13. On the same day, Plaintiff contacted Madison's Human Resources Director, Ms. Bobbi McGonigle, about her physician's recommendation and faxed a copy of her physician's report to Ms. McGonigle's attention.

**ANSWER:** It is admitted that on or about July 26, 2007, Madison received a copy of a doctor's note relating to Ms. Lutrell stating "Ms. Lutrell may not [illegible] able to work/travel pending workup of a medical condition 7/26 – 8/3". The remainder of this allegation is denied.

14. Ms. McGonigle responded to Plaintiff's diagnosis by requesting a revised physician's report clarifying Plaintiff's ability to work, but not travel.

**ANSWER:** Denied.

15. On July 31, 2007, after numerous calls to her physician, Plaintiff obtained a revised report from her stating the following: "[p]lease allow [Plaintiff] to work from home during this time and restrict her from traveling" until she consults with a specialist.

**ANSWER:** It is admitted that on or about July 31, 2007, Madison received a copy of a doctor's note stating "Ms. Lutrell needs to seek consultation with a specialist. Please allow her to work from home during this time and restrict her from traveling until her medical issues are resolved. Thank you." The remainder of this allegation is denied.

16. In response to the revised physician's report, Ms. McGonigle told Plaintiff that she was required to take medical leave since she could not perform her full duties which included travel. Defendant forced Plaintiff to use her vacation time while she attempted to obtain a third revised physician's report.

**ANSWER:** Denied.

17. On August 7, 2007, Plaintiff obtained and provided to Ms. McGonigle a third physician's report stating that Plaintiff was "able to, work full time unless otherwise notified by specialist."

**ANSWER:** It is admitted that on or about August 7, 2007, Madison received a copy of a doctor's note stating "Ms. Lutrell was released from work for further testing and referral to a specialist and is currently going to be under the care of a specialist. She is able to work full time unless otherwise notified by specialist." The remainder of this allegation is denied.

18. In response to the third report from Plaintiff's physician, Ms. McGonigle refused to allow Plaintiff to return to work. Ms. McGonigle told Plaintiff that Defendants did not consider her physician's report to be a release to work, but instead considered the report as a release to a specialist. Ms. McGonigle further insisted that Plaintiff obtain an additional release from the specialist before returning to work.

**ANSWER:** Denied.

19. In order to expedite her return to work, Plaintiff diligently pursued an appointment with a specialist. On August 12, 2007, Plaintiff's specialist, Charles E. Miller, M.D., provided a note to Madison confirming that she was cleared to return to work on regular duty until she has surgery to remove the tumor from her uterus.

**ANSWER:** After reasonable investigation, Defendants are without knowledge or information sufficient to form a belief as to the truth of the first sentence of this allegation. It is admitted that on or about August 12, 2007 Madison received a copy of a doctor's note stating, "Tracy is cleared to return to work on regular duty till has [illegible]." The remainder of this allegation is denied.

20. Despite having been released to work by her primary physician three times before seeing a specialist, Defendant Madison forced Plaintiff to take medical leave and use up approximately 40 hours of vacation.

**ANSWER:** Denied.

21. On August 13, 2007, Plaintiff returned to work.

**ANSWER:** Admitted.

22. A week later, without any prior incident, Plaintiff's supervisor, Ms. Niklaus, gave Plaintiff a Counseling Statement riddled with vague and inaccurate statements regarding Plaintiff's performance.

**ANSWER:**   Denied.

23. In stark contrast, all of Defendant Madison's Scorecards indicated that Plaintiff's properties were performing above Company average.

**ANSWER:**   Denied.

24. The Counseling Statement's inaccuracies include, *inter alia,* identifying two allegedly missed deadlines that came due at the same time Plaintiff was forced to take medical leave for her tumor diagnosis and identifying an alleged Verbal Counseling Statement that never took place and was never documented in her personnel file.

**ANSWER:**   Denied.

25. Plaintiff intentionally scheduled her surgery during the holiday week of Thanksgiving to minimize her absence from work. On November 19, 2007, Plaintiff underwent surgery to remove the tumor from her uterus.

**ANSWER:**   After reasonable investigation, Defendants are without knowledge or information sufficient to form a belief as to the truth of this allegation.

26. On November 28, 2007, Plaintiff returned to work.

**ANSWER:**   Admitted that Plaintiff was released to return to work on November 27, 2007.

27. On the same day, in retaliation for Plaintiff's use of medical leave necessitated by the tumor in her uterus, Plaintiff was immediately terminated from her employment with Defendants.

**ANSWER:**   Denied.

-6-

    28.    As a proximate cause of Defendants' wrongful retaliatory termination of her employment, Plaintiff has been damaged in excess of $75,000.

**ANSWER:**   This allegation is a conclusion of law to which no response is required. To the extent it is factual, it is denied.

    29.    Defendants' actions in retaliating against Plaintiff were willful and wanton and characterized by oppression, and malice is the gist of the action.

**ANSWER:**   This allegation is a conclusion of law to which no response is required.

## COUNT II
### Retailiation in Violation of the Family and Medical Leave Act

    30.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 29 of the Complaint as if set forth fully herein.

**ANSWER:**   Defendants incorporate herein their responses to the preceding paragraphs.

    31.    Plaintiff's transitory position and the requirement that she report to Defendants' corporate Philadelphia office makes her an employee of that office for purposes of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 ("FMLA").

**ANSWER:**   Denied.

    32.    Defendants employ more that 50 employees in their corporate Philadelphia office.

**ANSWER:**   Denied.

    33.    Jurisdiction is proper because the FMLA contains an enforcement provision allowing a right of action in State or federal court.

**ANSWER:**   This allegation is a conclusion of law to which no response is required.

    34.    Defendants terminated Plaintiff in response to her taking necessary medical leave to have a tumor removed.

**ANSWER:**   Denied.

35. Defendants' retaliated against Plaintiff in terminating her for taking medical leave under the FMLA.

**ANSWER:** Denied.

36. As a proximate cause of Defendants' violation of the Family and Medical Leave Act, Plaintiff has been damaged in excess of $75,000.

**ANSWER:** This allegation is a conclusion of law to which no response is required. To the extent it is factual, it is denied.

## COUNT III
## Interference With Family and Medical Leave Act Rights

37. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 36 of the Complaint as if set forth fully herein.

**ANSWER:** Defendants incorporate herein their responses to the preceding paragraphs.

38. Defendants retaliated, oppressed and harassed Plaintiff after the diagnosis of the tumor in her uterus by demanding five separate and distinct physician's releases.

**ANSWER:** Denied.

39. Even after obtaining reports from her primary physician releasing her to work, Defendants forced Plaintiff to take unnecessarily medical leave and use her remaining vacation time.

**ANSWER:** Denied.

40. Compounding the Defendants' oppressive tactics in contravention of FMLA, after Plaintiff returned to work, her supervisor Ms. Niklaus impeded her ability to carry out her job duties by refusing to respond to Plaintiffs calls and e-mails.

**ANSWER:** Denied.

41. On August 27, 2007, after forcing Plaintiff to use all of her remaining vacation time to obtain three unnecessary physician's releases, Defendants informed Plaintiff that

>       her previously approved time off for a wedding attendance would no longer be honored due to her medical leave.

**ANSWER:**    Denied.

>   42.  Defendants' responsive tactics to Plaintiff's tumor diagnosis caused Plaintiff to schedule her surgery during the Thanksgiving holiday week to reduce her medical leave.

**ANSWER:**    Denied.

>   43.  After her surgery, Plaintiff's surgeon released her back to work on the condition that she avoid heavy lifting. Defendants needlessly demanded that Plaintiff obtain a full release to be allowed to return to work despite her job not requiring any heavy lifting. Under duress, Plaintiff implored her surgeon to issue her a full release without restriction.

**ANSWER:**    Denied.

>   44.  Defendants' retaliatory and oppressive actions together with harassment and the hindering of her ability to perform her job constitute an interference with Plaintiff's rights under the FMLA.

**ANSWER:**    This allegation is a conclusion of law to which no response is required. To the extent it is factual, it is denied.

>   45.  As a proximate cause of Defendants' interference with Plaintiff's rights under the FMLA, Plaintiff has been damaged in excess of $75,000.

**ANSWER:**    This allegation is a conclusion of law to which no response is required. To the extent it is factual, it is denied.

## AFFIRMATIVE DEFENSES

**AFFIRMATIVE DEFENSE 1.**    Plaintiff's claims are barred, in whole or in part, to the extent she has failed properly to mitigate her alleged damages.

**AFFIRMATIVE DEFENSE 2.** Plaintiff has not suffered any injury, loss or damages as a result of any of Defendants' conduct or actions.

**AFFIRMATIVE DEFENSE 3.** Plaintiff's claims may be barred, in whole or in part, because Plaintiff has not satisfied or exhausted certain administrative, statutory and/or jurisdictional requirements to asserting such claims in this action.

**AFFIRMATIVE DEFENSE 4.** Plaintiff cannot establish a claim against Defendants for compensatory or punitive damages.

**AFFIRMATIVE DEFENSE 5.** At all times, Defendants acted appropriately and in good faith and without any harmful or malicious intent, and did not engage in any willful, wanton, or oppressive conduct.

**AFFIRMATIVE DEFENSE 6.** Any and all of Defendants' actions, if any, taken toward Plaintiff were based on legitimate, nondiscriminatory reasons unrelated to Plaintiff's use of medical leave, and were not in retaliation for taking medical leave.

**AFFIRMATIVE DEFENSE 7.** Assuming, without conceding, that Plaintiff was subjected to unlawful harassment and/or discrimination, and to the extent Plaintiff suffered any adverse job action, Madison would have taken the same action absent any alleged unlawful discriminatory factor.

**AFFIRMATIVE DEFENSE 8.** Any damages Plaintiff seeks to recover, proof of which is required, were the result of Plaintiff's own actions, omissions or conduct, and/or events unrelated to Plaintiff's employment.

WHEREFORE, Defendants respectfully request that judgment be entered in their favor and against Plaintiff, together with costs, including attorneys' fees, and such other relief as this Court deems just.

Dated:  April 3, 2008

Respectfully submitted,

MADISON APARTMENT GROUP, L.P. and
BPG PROPERTIES, LTD.


By  /S/ Jon E. Klinghoffer_____
   One of Its Attorneys


Jon E. Klinghoffer
GOLDBERG KOHN BELL BLACK
 ROSENBLOOM & MORITZ, LTD.
55 East Monroe Street
Suite 3300
Chicago, Illinois  60603
(312) 201-4000

-11-